## SUPREME COURT.

ISAAC BUTTS and others, respondents, agt. ABNER DICKINSON, appellant.

*Supplementary proceedings,* under § 292 of the Code, cannot be instituted in any case, upon a judgment recovered in a justices court for *less than twenty-five dollars,* where a transcript has been filed, and execution issued and returned unsatisfied in whole or in part. (*This overrules the case of Candee agt. Gundelsheimer,* 17 *How.,* 434.—*County court decision.*)

*Monroe General Term, September,* 1860.
E. DARWIN SMITH, P.J. T. A. JOHNSON, and A. T. KNOX, J.J.
APPEAL from an order of county judge.

GEO. F. DANFORTH, *for appellant.*
J. N. POMEROY, *for respondents.*

By the court, KNOX, Justice. The question to be decided, involves the construction of section 292 of the Code, and is : " Can supplementary proceedings be instituted upon a judgment, recovered in a justice's court, for less than $25, when a transcript of that judgment has been filed, and execution issued and returned unsatisfied, in whole, or in part ?" Previously to the decision of the county judge of Monroe, in *Candee* agt. *Gundelsheimer,* (17 *Howard,* 434, and 8 *Abbott,* 435,) the profession were, I think, almost unanimously of the opinion that these proceedings were authorized only where an execution had been issued and returned unsatisfied, upon a judgment, which was a lien on real estate.

Whittaker says, " although, by the provisions above cited, proceedings of this nature cannot be taken on a justice's judgment for less than $25, costs not included, a judgment of that nature, for a larger amount, duly docketed in the county court, ranks in all respects, as a judgment of a court of record, as regards ulterior proceedings, and, in

particular, those now under consideration." ( *Whittaker's Practice*, 2d vol. 2d ed. p. 121.)   *Conway* agt. *Hitchins*, (9 *Barb.* 378,) is cited by this author; but as the judgment there was over $25, exclusive of costs, the case does not support the proposition.

Judge HILTON, of the New York common pleas, has decided in the same way, expressly overruling *Candee* agt. *Gundelsheimer*, (*see op. of Hilton, J.*)   *Vultee* agt. *Whitehead, Jr.*, (2 *Hilton*, 596.)

The opinion of Judge HILTON is open to the criticism, that it ignores subdivisions 12 and 13 of section 64 of the Code, which expressly authorize executions to be issued by the county clerk to the sheriff of the county.   He treats the question as if the executions could issue only by virtue of section 289, which applies to executions in courts of record only.   He held, therefore, that inasmuch as an execution on a judgment in a justice's court, for less than $25, was not in the form prescribed by section 289, subdivision 1, these proceedings could not be instituted.

With great respect for the intelligent judge, who made the decision in *Candee* agt. *Gundelsheimer*, I must say that I have been unable to satisfy myself that he is correct.   It will be seen by a glance, that whatever may be said as to the correctness of the conclusion of the county judge, his opinion as a whole, is a " *felo de se;*" for in answer to an objection on the argument before him, that " the effect of his decision would be to repeal that portion of the statute relating to the lien on real estate," he says, " this is not necessarily so; for these supplementary proceedings are not instituted until the affidavit is produced, that the sheriff has returned the execution unsatisfied, which he could not do, had the defendant any *real estate* in the county, upon which the *lien* could be enforced."   This is an obvious concession of the whole ground taken by those who dissent from his conclusion.

Under the provisions of the Code of 1848, I entertain no

doubt, that these proceedings could have been instituted, though the justice's judgment were for a sum less than $25. Section 247, which is now 292, required that an execution against property of the judgment debtor should be issued to the sheriff of the county where he resided, or if he resided out of the state, to the sheriff of the county where the judgment roll was filed, to be returned unsatisfied, in whole or in part. And section fifty-six provided that a justice of the peace, on the demand of a party in whose favor he had rendered *a judgment*, should give a transcript which might be filed and docketed with the county clerk, where the judgment was rendered, and from that time this *judgment* was to have the same effect as a lien, and be enforced in the same manner as a judgment of a county court. Nothing was said as to the amount of the judgment. Hence, an execution issued on such a judgment, would go against the " property" of the debtor, which word " property" was in section 385, defined as used in that Code, to mean " real and personal property." This provision, making a judgment in a justice's court for less than $25, a lien on real estate, was entirely new. By the Revised Statutes, a judgment for over $25, could be made a lien, and a creditor's bill (for which the proceedings, by virtue of section 292, are a mere substitute,) could be filed, to enforce the collection of such judgments, if sufficiently large, to comply with the statute, provided the plaintiffs therein had exhausted their remedy at law against the real and personal property of the defendants. It was not enough to have done so against personal property only. (*Dix* agt. *Briggs*, 9 *Paige*, 597.)

It will be seen, that under the Code of 1848, these proceedings could not have been instituted against a *non-resident*, against whom a *justice's* judgment had been rendered, and transcript filed. He could be reached only upon a judgment in a court of record. Whether this was an oversight, or whether section 247 was originally intended by

the codifiers to embrace judgments in courts of record only, it is difficult to say.

The legislature of 1849 evidently supposed that it did embrace justice's judgments; and hence the amendment of that year, which put non-residents on an equality with residents, against whom a transcript of a justice's judgment had been filed. An argument may be made, that section 247 did not embrace, and was not designed to embrace justice's judgments. What argument is this? Section 247 is formed under title nine, entitled " of the execution of the judgment in civil actions." The first chapter before this is, " of the manner of entering judgment." The second chapter " of trial by referees." The third chapter " of trial by the court." All of these chapters refer to judgments and executions in courts of record, and to no other. Then chapter second, of title nine, which contains section 247, next following the title which treats " of the *execution* of the judgment in civil actions," treats of " proceedings *supplementary* to *the* execution." Again, the codifiers, in section 238, use the phrase, " the party in whose favor *judgment is given;*" the same phrase being used in section 230 of chapter six, which provides that " judgment *may be given* for or against one or more of several defendants, and it may determine the ultimate rights on each side, as between themselves." So in section 240, they speak of " a judgment which requires the payment of money, or of the delivery of real or personal property ; and in the same section mention is made of a " certified copy of the judgment." In section 244 they speak of the " judgment roll." In neither chapter of title nine, is language employed, from which we can infer that these chapters were applicable to judgments, other than those of courts of record. Besides, I think a fair construction of section 247, *by itself*, excludes the idea that a judgment of a justice of the peace was included among those which could be the foundation of these proceedings. The section contemplated two cases : one where

the debtor resided out of the state, and the other, where he resided in the state. In the former case the execution must have been issued to the county where the *judgment roll* was filed; in the latter case to the county where he resided, whether the judgment roll was filed there or elsewhere. In either case the execution must have had for its foundation a "judgment roll." Any other construction would involve the before mentioned anomaly, to wit: that a judgment debtor, in a justice's court, although a transcript had been filed, and judgment docketed, and execution returned unsatisfied, could not be proceeded against if he were a non-resident. In other words, favors were granted to non-residents, which were denied to residents of the state.

This has not been the policy of governments. However this may be, the legislature of 1849 supplied the omission in regard to non-residents, by adding after the words, "judgment roll," a "transcript of a justice's judgment is filed." Section fifty-six was also amended, or rather section sixty-three was substituted for it. This amendment was that no judgment of a justice of the peace, for a less sum than $25, exclusive of costs thereafter docketed, should be a lien upon, or enforced against real property. And subdivision thirteen of section 64, in relation to the issuing of executions to the sheriff upon judgments rendered by justices, and docketed with the clerk, provides that they should be executed in the same manner as other executions and judgments of the county court, except as provided in section sixty-three.

The effect of these amendments is this; section 292, requires that an execution be returned against "property" of the judgment debtor. Section 464 defines "property," as used in the Code, to mean "real and personal property." An execution on a justice's judgment, for less than $25, is no lien on *real* property, and goes against *personal* only, and hence the return of an execution on such a judgment cannot be the basis for supplementary proceedings.

Section 292 was amended in 1851, by inserting after the words "justice's judgment," " twenty-five dollars or upwards, exclusive of costs." Why this amendment ? If a non-resident could before this have been proceeded against, on the return of an execution, issued to the county where the transcript was filed, this amendment was entirely useless, unless the plaintiff will contend that the legislature intended that a non-resident should not be proceeded against unless the judgment was over $25, whereas a judgment for any less sum should be a sufficient basis for these proceedings against a resident. But on the theory that an execution must first go against real and personal property, the amendment was sensible, for it said in express terms, what before was a matter of inference and construction.

The view of the question now taken harmonizes the different sections of the Code—makes the various amendments consistent with it and each other, and leaves the law as to proceedings in the nature of a creditor's bill upon justice's judgments, where it was previously to the enactment of the Code, except that now it is not necessary that the judgment should be for at least $100, but it must be at least $25.

The Revised Statutes required that the court of chancery should dismiss every suit concerning property where the matter in dispute, exclusive of costs, did not exceed $100. (2 *R. S.*, *p.* 102, 2*d ed.* §41.)

The reason for this really was, not that it was " beneath the dignity of the court," to entertain actions for so " small and trivial an amount," but that the litigation in that court would, considering the costs, be necessarily vexatious and oppressive to the suitor, and exhaust more than the subject of controversy. " The remedy would be worse than the disease." This the legislature and the codifiers well knew; and it is doing them injustice to suppose that they intended that upon a judgment for one dollar, or any sum less than twenty-five dollars, the debtor might be compelled to answer

on oath concerning his property; that witnesses might be called to testify; an injunction order issued; a receiver appointed; and, finally, the debtor liable to pay witnesses fees, and disbursments, and a fixed sum in addition, not exceeding *thirty* dollars, as *costs*?

The order appealed from should be reversed.